1 F.3d 1243
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alex VIRAMONT, Defendant-Appellant.
 No. 91-6352.
 United States Court of Appeals, Sixth Circuit.
 July 19, 1993.
 
 Before: MILBURN and BOGGS, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Alex Viramont challenges the voluntariness of his guilty plea. We affirm the district court's September 5, 1991 Judgment in a Criminal Case for the following reasons.
 
 I.
 
 2
 On February 25, 1991, Officer Laney Hughes of the Shelby County Sheriff's Department observed defendant-appellant Alex Viramont driving suspiciously through Memphis, Tennessee, with his wife and two-year-old child. After stopping the vehicle, Officer Hughes discovered that the vehicle was not registered to Viramont, and that Viramont had a criminal record for auto theft. Noting that Viramont was becoming increasingly nervous and evasive, Officer Hughes asked for, and received, Viramont's consent to search the vehicle which resulted in the discovery of four kilograms of cocaine hidden in the trunk.
 
 
 3
 On March 8, 1991, the grand jury returned a one-count indictment against Viramont and his wife, Ana Sonia Gutierrez:
 
 
 4
 On or about February 25, 1991, in the Western District of Tennessee, the defendants, ALEX VIRAMONT [and] ANA SONIA GUTIERREZ, being aided and abetted each by the other did unlawfully, knowingly and intentionally possess with the intent to distribute approximately 4 kilograms of cocaine, a controlled substance as classified by Title 21, United States Code, Section 812 as a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.
 
 
 5
 March 8, 1991 Indictment.
 
 
 6
 Though the appellant initially pled not guilty at his arraignment on April 10, 1991, Viramont later changed his plea to guilty. The district court accepted Viramont's guilty plea on May 9, 1991, following a Rule 11 hearing to determine the voluntariness of his plea. On September 5, 1991, the district court judge sentenced Viramont to 97 months imprisonment, to be followed by three years of supervised release. Viramont thereafter filed a timely notice of appeal challenging the voluntariness of his guilty plea.
 
 II.
 
 7
 Viramont's Right to Cross-Examine Adverse Witnesses
 
 On appeal, Viramont argues:
 
 8
 In the course of the hearing on May 9, 1991, to determine the voluntariness of Viramont's plea, the Court never asked for, nor did Viramont articulate, a plea of guilty to the charge against him. The Court did not advise Viramont of his constitutional right to a trial by jury or of his right to confront and cross-examine witnesses against him. Nor did the Court establish a factual basis for a plea of guilty to the indictment, particularly with regards to the elements of knowingly [sic] and specific intent.
 
 
 9
 Appellant's Brief at 4.
 
 
 10
 The applicable Federal Rule of Criminal Procedure provides:
 
 
 11
 (c) Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
 
 
 12
 (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense; and
 
 
 13
 (2) if the defendant is not represented by an attorney, that the defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant; and
 
 
 14
 (3) that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, and the right against compelled self-incrimination; and
 
 
 15
 (4) that if a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial; and
 
 
 16
 (5) if the court intends to question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant has pleaded, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.
 
 
 17
 (d) Insuring That the Plea is Voluntary. The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or the defendant's attorney.
 
 
 18
 ....
 
 
 19
 (f) Determining Accuracy of Plea. Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.
 
 
 20
 ....
 
 
 21
 (h) Harmless Error. Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded.
 
 
 22
 Fed.R.Crim.P. 11.
 
 
 23
 Though Viramont asserts that the district court failed to satisfy the requirements of Rule 11, a review of the transcript from Viramont's plea hearing reveals that the appellant's claim lacks merit:
 
 
 24
 THE COURT: What I really want to know is are you familiar with the procedure we have to go through before I can accept your guilty plea. I will go on, but what I have to do is ask you a series of questions that will let me determine whether you are changing your plea voluntarily and with an understanding of the possible consequences this might present to the case. Now, do you understand that's what we're about to do?
 
 
 25
 VIRAMONT: Yes, sir.
 
 
 26
 ....
 
 
 27
 THE COURT: Now, you are standing before the Court having plead [sic] not guilty to a one count indictment, and I need to be sure you understand that you like any other defendant who's been charged by a grand jury has a right to go to trial and require the government to prove you're guilty before you can be considered and found guilty. Do you understand that?
 
 
 28
 VIRAMONT: Not really.
 
 
 29
 THE COURT: Let me back up. Anybody who is indicted has a right to go to trial if you want to. Now, your lawyer says you want to plead guilty which means you won't have a trial. Do you understand?
 
 
 30
 VIRAMONT: Yeah, I don't need a trial.
 
 
 31
 THE COURT: I want to be sure that you understand that if you went to trial that the government would have [to] prove you were guilty and you wouldn't have to prove you were innocent. Do you understand?
 
 
 32
 VIRAMONT: Yes.
 
 
 33
 THE COURT: Now, we don't want anybody pleading guilty to a crime he didn't commit or didn't think of committ[ing]. I'm not asking you if you'd like to plead guilty, but I'm asking ... if you understand that you don't have to plead guilty. Do you understand that?
 
 
 34
 VIRAMONT: Yes.
 
 
 35
 THE COURT: And if you went to trial, you wouldn't have to testify or your lawyer wouldn't even have to offer any witnesses and the government would still have to convince twelve jurors beyond a reasonable doubt that you did this crime. Do you understand that?
 
 
 36
 VIRAMONT: Uh-huh.
 
 
 37
 THE COURT: What they have to prove [is] that on or about February 25, 1991, in the Western District you did unlawfully, knowingly and intentionally possess with intent [to] distribute approximately four kilograms of cocaine, a controlled substance as classified by the laws and regulations of the United States. Do you understand that's what the charge is and that is what they would have to prove?
 
 
 38
 VIRAMONT: Yes, sir.
 
 
 39
 ....
 
 
 40
 THE COURT: Now this carries a penalty of not less than five years or not more than forty years plus a possible two billion [sic] dollar fine or both, together with a four year term of supervised release with a mandatory special assessment of 50 dollars. Now, I need to be sure you understand how we calculate the sentences.... Now, you might be adjusted downward for the acceptance of responsibility or something else, but I know one thing, the law will not let me go under that five years, and I don't want you to get your hopes up based [on] what I have asked about it only being five years. Do you understand that?
 
 
 41
 VIRAMONT: Yes.
 
 
 42
 THE COURT: Now, this business of supervised release is a term of what it says of supervised release after you have finished your confinement period. And that means that under that four-year term that's required by the statute you have to be under the supervision of a probation officer.... [T]here's no penalty as long as you stay out of trouble, but if you get in trouble or mess up with drugs or any other law violation during that time, then you would be subject to having to be sent back in custody for the period of your supervised release. Do you understand that?
 
 
 43
 VIRAMONT: Yes, sir.
 
 
 44
 THE COURT: Do you also understand that when you plead you waive any right to appeal your conviction or your guilt, you waive anything that you might have used as a defense as to [whether] they [properly] seized the evidence from you or whether you--they took a statement from you improperly or if you think they did, you're waiving that. Do you understand?
 
 
 45
 VIRAMONT: Yes.
 
 
 46
 ....
 
 
 47
 THE COURT: The case against your co-defendant will be dismissed. I don't know how that--whether that pleases you or displeases but I just want to be sure you understand that's what's going to happen depending on your plea. Do you understand?
 
 
 48
 VIRAMONT: Yes, sir.
 
 
 49
 THE COURT: Anything else from counsel.
 
 
 50
 [DEFENSE COUNSEL]: No, sir, Your Honor. The Court has covered it.
 
 
 51
 ....
 
 
 52
 THE COURT: Any other questions while you're here before the Court?
 
 
 53
 VIRAMONT: No.
 
 
 54
 THE COURT: All right. Thank you very much.
 
 
 55
 Joint Appendix at 13-20.
 
 
 56
 Though the United States concedes that the district court failed to inform Viramont that he was waiving his right to cross-examine witnesses at trial, see Fed.R.Crim.P. 11(c)(3) (a defendant has "the right to confront and cross-examine adverse witnesses"), the prosecution properly notes that "this specific oversight has been held to be insufficient to require the Court of Appeals to vacate the district court's judgment." Appellee's Brief at 5. In United States v. Stead, 746 F.2d 355 (6th Cir.1984), cert. denied, 470 U.S. 1030 (1985), this court held:
 
 
 57
 Stead now argues that the district court judgment should be vacated because the trial judge failed to strictly comply with the requirements of Federal Rule of Criminal Procedure 11(c). According to Stead, the district court failed to inform him of his right to confront and cross-examine witnesses and his right to be free from self-incrimination. Stead also asserts that the district court failed to inform him of the nature of the charges against him as required by Rule 11(c).
 
 
 58
 We have reviewed the record and find that Stead is correct in his assertion that the district court did not advise him of his right against self-incrimination or his right to confront and cross-examine witnesses. However, these omissions by the district court are not sufficient to require us to vacate the district court's judgment.
 
 
 59
 ....
 
 
 60
 A review of the record in this case using Rule 11(h) discloses that the district court substantially complied with requirements of that rule. Judge Johnstone made a conscientious and meticulous effort to ascertain that Stead's guilty plea was voluntary. He also sought to ensure that Stead understood the nature of the changes [sic] against him and the consequences of his guilty plea. The failure to mention the specific rights named by the defendant does not preclude a finding that Stead voluntarily and intelligently entered his guilty plea. Thus, under Rule 11(h), the district court's omission constitutes harmless error as no substantial right of the appellant has been violated.
 
 
 61
 Id. at 356-57.
 
 
 62
 The transcript from the plea hearing reveals that the district court judge ascertained the voluntariness of Viramont's guilty plea by repeatedly asking the appellant if he understood his rights, and by repeating inquiries if it appeared that Viramont was confused by the discussion. The district court's failure to mention Viramont's right to cross-examine adverse witnesses does not negate the fact that Viramont entered his plea knowingly and voluntarily. Moreover, Viramont's attorney expressly noted at the conclusion of the plea hearing that the district court had "covered" all the topics that needed to be addressed. We therefore reject Viramont's first assignment of error.
 
 Federal Rule of Criminal Procedure 11(f)
 
 63
 The Federal Rules of Criminal Procedure provide: "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." Fed.R.Crim.P. 11(f). Though the appellant asserts that "[t]he record is silent with regard to the establishment of a factual basis for Viramont's purported plea," Appellant's Brief at 10, the plea hearing colloquy between Viramont and the district court judge clearly reveals that Viramont admitted possessing, with the intent to distribute, approximately four kilograms of cocaine:
 
 
 64
 THE COURT: I want to be sure that you understand that if you went to trial that the government would have [to] prove you were guilty and you wouldn't have to prove you were innocent. Do you understand?
 
 
 65
 VIRAMONT: Yes.
 
 
 66
 THE COURT: Now, we don't want anybody pleading guilty to a crime he didn't commit or didn't think of committ[ing].
 
 
 67
 ....
 
 
 68
 THE COURT: What they have to prove [is] that on or about February 25, 1991, in the Western District you did unlawfully, knowingly and intentionally possess with intent [to] distribute approximately four kilograms of cocaine, a controlled substance as classified by the laws and regulations of the United States. Do you understand that's what the charge is and that is what they would have to prove?
 
 
 69
 VIRAMONT: Yes, sir.
 
 
 70
 THE COURT: That is, that you possessed or that is controlled approximately four kilos of cocaine. That is, you possessed it with the intent to distribute it to somebody else or at least part of it. Do you understand that?
 
 
 71
 VIRAMONT: Yes, sir.
 
 
 72
 Joint Appendix at 14-15.
 
 
 73
 Though the factual basis underlying Viramont's guilty plea was presented with little elaboration during the plea hearing, the colloquy nevertheless provided the district court with the requisite factual underpinnings to sustain the conviction. See United States v. Van Buren, 804 F.2d 888, 892 (6th Cir.1986) (extent to which factual basis must be developed depends on the complexity of the crime).
 
 
 74
 Though Viramont maintains that he did not understand the proceedings in district court, see Appellant's Brief at 10 ("It should be noted that Mr. Viramont is a 28 year old Mexican citizen; so, even though he has been living in California for 11 years, a facility with the English language and an understanding of our legal system cannot be assumed."), the transcript from the plea hearing reveals that Viramont understood the questions that the district court judge asked, answered the judge's questions appropriately, and did not request an interpreter.
 
 
 75
 We therefore conclude that the district court judge properly afforded Viramont his constitutional and procedural protections prior to accepting his guilty plea.
 
 III.
 
 76
 We AFFIRM the district court's September 5, 1991 Judgment in a Criminal Case for the aforementioned reasons.